Rudy Livingston Deputy Director Department of Personnel 1313 Sherman Street, First Floor Denver, Colorado 80203
Dear Mr. Livingston:
I am writing in response to your request of December 8, 1982, for a formal legal opinion as to whether the Personnel Board can adopt rules to be administered by the Personnel Department which provide for mandatory or voluntary furloughs of employees or for the deferral of payment of earned employee salaries to meet budgetary or fiscal constraints.
QUESTIONS PRESENTED AND CONCLUSIONS
Your inquiry raises the following three questions:
a. Can the Personnel Board adopt rules to be administered by the Personnel Department which would require employees to take mandatory furloughs instead of laying off or terminating employees?
b. Can the Personnel Board adopt rules to be administered by the Personnel Department which would allow employees to take voluntary furloughs instead of laying off or terminating employees?
c. Can the Personnel Board adopt rules to be administered by the Personnel Department which would allow employees to defer the payment of part of their salaries until retirement or termination?
I have reached the following three conclusions:
d. C.R.S. 1973, 24-50-109 and 124(1) (1982 repl. vol. 10), require that state employees be laid off or terminated by seniority when sufficient funds are not available to pay them. The statutes do not allow the Personnel Board to adopt rules to require employees to take mandatory furloughs due to budgetary or fiscal constraints.
e. The Personnel Board can adopt rules to be administered by the Personnel Department which would allow employees to take voluntary furloughs to alleviate budgetary or fiscal constraints.
f. C.R.S. 1973, 24-50-104(1) and 109 (1982 repl. vol. 10), prohibit the Personnel Board from adopting rules which allow employees to defer the payment of their salaries until retirement or termination.
ANALYSIS
You have asked this office to analyze proposed personnel rules requiring employees in some instances and allowing them in other cases to take furloughs without pay to alleviate the need to layoff or to terminate employees due to budgetary or fiscal constraints. At the same time, you have requested our analysis as to whether employees can work but defer payment of up to 24 days of their earned salaries each fiscal year until their retirement or termination. The issue of furlough leave will be discussed first.
1. and 2. Colo. Const. art. XII, section 14(3), empowers the Personnel Board (Board) to make rules to implement the personnel provisions in the Constitution and the laws enacted by the State Legislature. Colo. Const. art. XII, section 15(3)(a), requires that when funds are lacking for the payment of salaries, reductions in state employment are to be made by seniority, including applicable credit for military service. C.R.S. 1973,24-50-109 (1982 repl. vol. 10), states in pertinent part that:
 Should funds made available for the payment of salaries be insufficient for the payment of the employees at the rate to which they are entitled under this part 1, the proper salary shall nevertheless be paid to all who are employed, and employees shall be separated in accordance with such deficiency.
This section requires that state employees be paid the salary to which they are entitled. If an agency is unable to pay all of its employees, workers are to be laid off in accordance with C.R.S. 1973, 24-50-124(1) (1982 repl. vol. 10), which was amended in 1981 to allow consideration of performance evaluations in addition to seniority. That part of C.R.S. 1973, 24-50-124(1) which allows for the consideration of factors other than seniority was declared unconstitutional by Denver District Court Judge Gilbert Alexander in CAPE v. Lamm, Civil Action No. 81CV5678, which is now on appeal before the Colorado Supreme Court. At the present time, Judge Alexander's ruling requires that only seniority be considered in determining whom to layoff or terminate due to lack of funds.
Both the mandatory and voluntary furlough rules proposed by the Personnel Department (department) provide for the reduction of employee hours, without the exhaustion of annual and sick leave, to avoid employee layoffs because of insufficient funds. Mandatory furloughs would result in the reduction of hours and pay of employees irrespective of seniority. Voluntary furloughs would be based on agreements between appointing authorities and employees to reduce work hours and pay to avoid more severe position reductions and abolishments.
Mandatory furloughs would be at the discretion of appointing authorities and therefore would be contrary to both the constitutional and statutory requirements that employees be laid off based on seniority when agency funds are insufficient. C.R.S. 1973, 24-50-109 and 124(1) do not permit appointing authorities to involuntarily decrease the hours and pay of personnel employees. The sections require that when funds are insufficient to pay all employees the salaries to which they are entitled, employees are to be laid off based on seniority. A personnel rule which would allow appointing authorities to furlough employees without their consent would be contrary to the law.
A voluntary furlough rule would not suffer the same legal prohibitions as mandatory leaves without pay, since legally these would constitute leaves of absence. Such voluntary efforts by appointing authorities and employees are authorized by C.R.S. 1973, 24-50-120(1) (1982 repl. vol. 10). That subsection requires the Board to "prescribe by rule the conditions and length of time for which leaves of absence without pay may be granted by appointing authorities." Implicit in that statute and explicit in 4 C.C.R. 801-1, personnel rule 6-3-7, is that the employee is to request the leave of absence. This also is explicit in the proposed voluntary furlough proposal, which would be permissible under Colorado law.
3. The department also has proposed rules relating to what it has entitled "furlough leave." This proposal, which in reality is a form of deferred compensation, would permit an employee to enter into an agreement with an appointing authority to defer up to 24 days of earned pay each fiscal year to be paid on that employee's retirement or termination. An employee who agreed to such a plan would work as before but would not be reimbursed as required by C.R.S. 1973, 24-50-104(1) and 109 for that entire time period worked until leaving state service.
The department's proposed rule on deferred compensation is distinguishable from the deferred compensation plan which has been established by the state controller. The controller's plan was established pursuant to 26 U.S.C. § 457, Internal Revenue System regulation section 1.457 (26 C.F.R. section 1.457) and C.R.S. 1973, 24-50-104(1)(c). The state subsection permits personnel employees to deduct money from their salaries for their economic benefit if "approved by the official authorized to disburse funds in payment of the salary. . . ." The controller's deferred compensation plan results in moneys paid to the employees being placed in a fund which earns interest and is available to the employee upon retirement. Taxes are deferred on the moneys deposited until withdrawn.
The department's proposed rule would not only defer the employee's access to the moneys earned until retirement or termination but also the payment of those funds by the state until that time. This is contrary to C.R.S. 1973, 24-50-104(1)(a) which states in pertinent part that "salaries . . .shall be paid twelve times per year on or as of the last working day of each month from funds made available thereof." This subsection must be read in conjunction with C.R.S. 1973, 24-50-109 which also requires the payment to employees of their salaries as earned. That section requires that "the proper salary shall . . . be paid to all who are employed. . . ." These sections prohibit the deferral of payment of salaries earned to some unknown date in the future. Therefore, the department's proposed rules on deferred compensation would violate the law.
SUMMARY
In conclusion, it is my opinion that C.R.S. 1973, 24-50-109 and 124(1) prohibit the Personnel Board from adopting rules requiring employees to take mandatory furloughs when funds are lacking to pay salaries. The statutes require that in such a situation employees must be laid off or terminated by seniority. The Personnel Board is empowered, however, to adopt rules allowing employees to take voluntary furloughs or voluntary leaves without pay to prevent a state agency from having to lay off or terminate employees due to insufficient funds. Finally, the Personnel Board can not adopt valid rules relating to deferred payment of salaries earned because such rules would violate C.R.S. 1973,24-50-104(1) and 109.
Very truly yours,
 DUANE WOODARD Attorney General
EMPLOYEES, PUBLIC SALARIES STATE AGENCIES
C.R.S. 1973, 24-50-104(1)(a) and (c) (1982 repl. vol. 10) C.R.S. 1973, 24-50-109 (1982 repl. vol. 10) C.R.S. 1973, 24-50-120 (1982 repl. vol. 10) C.R.S. 1973, 24-50-124(1) (1982 repl. vol. 10)
Colo. Const. art. XII, § 14(3) Colo. Const. art. XII, § 15(3)(a)
PERSONNEL, DEPT. OF State Personnel Bd.
C.R.S. 1973, 24-50-109 and 124(1) (1982 repl. vol. 10) permit the Personnel Board to adopt voluntary but not mandatory furlough rules where funds are lacking to pay salaries of state employees. The Personnel Board is prohibited by C.R.S. 1973, 24-50-104(1) and 109 (1982 repl. vol. 10) from adopting rules allowing the deferred payment of earned salaries until retirement or termination.